## Case No. 48.

ADAMS et al. v. BRADLEY et al.

[5 Sawy. 217.][1]

Circuit Court, D. Nevada. Aug., 1878.

STATES AND STATE OFFICERS — ACTION AGAINST STATE—RES JUDICATA.

1. A state cannot be sued in its courts without its consent.

[Cited in Spring Valley Waterworks v. Bartlett, 16 Fed. Rep. 622, and in State v. Columbus & X. R. Co., 48 Fed. Rep. 628. See, also, Railroad Co. v. Tennessee, 101 U. S. 339.]

[See note at end of case.]

2. The appearance of the district attorney, or the attorney-general of the state, on behalf of the state, without express authority of law, does not give jurisdiction over the state as defendant in the action.

[See note at end of case.]

3. Comp. Laws Nev. § 2778, does not authorize the attorney-general to so appear for the state generally in an action against its officers in their individual capacity, as to make it a party to the action, and conclude it by the judgment.

4. Treadway sued Slingerland, in his individual capacity, to recover possession of lands upon which the Nevada state prison is situated. Slingerland, who was at the time lieutenant-governor of the state and ex officio warden of the state prison, set up as a defense title in the state, and that he was in possession under the state as warden of the state prison, and not otherwise. R. M. Clarke, who was then attorney-general of the state, appeared as attorney for the defendant without using his official designation in the signature to the pleadings. Treadway recovered judgment. In a subsequent action by the successors in interest of Treadway against the governor, warden—the successor in office to Slingerland— and other officers of the state, to recover the same land: Held, that the judgment in said case of Treadway v. Slingerland did not conclude the state or affect its title.

[At law. Action to recover possession of land, tried by the court upon submission of facts agreed on. Judgment for defendants.]

This is an action brought against L. R. Bradley, governor, James D. Minor, secretary of state, and John R. Kittrell, attorney general of the state of Nevada, constituting the board of state prison commissioners, and Milton R. Elstner and P. C. Hyman, wardens of the state prison, to recover posses-

[1][Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

sion of the lands upon which the state prison of Nevada is situated. In 1870, one A. D. Treadway brought an action in a state court against J. B. Slingerland, in his individual capacity, to recover the same land. The complaint was in the usual form where one citizen brings an action against another to recover land, alleging title in the plaintiff, and an unlawful eviction and detention by defendant. Slingerland answered denying the title of plaintiff and ouster by defendant. He then set up as a separate affirmative defense title in the state of Nevada; that the premises were possessed and occupied by the state of Nevada as a state prison; that the defendant was warden of the state prison, and that he was residing upon the premises, and in charge, with other officers, under the authority of the laws of Nevada as such warden, and not otherwise. The answer was signed, "Robt. M. Clarke, defendant's attorney," without any official designation. Slingerland was in fact, at that time, lieutenant-governor of the state, and ex officio warden of the state prison, and in immediate charge of the premises as such; and Robert M. Clarke was attorney-general of the state. The court found the legal title to the premises to be in the plaintiff, and that the state had the equitable title; but rejected the state's equitable title on the ground that it had not been pleaded as a defense; and rendered judgment in favor of the plaintiff for the possession of the premises. In the course of the proceedings Clarke filed a brief on behalf of the defendant, signed, "Robt. M. Clarke, attorney-general, for defendant." This is the only instance in which he used his official designation. Subsequent to the rendition of said judgment, and before the commencement of the present action, the title of Treadway became, by proper conveyances, vested in the plaintiffs, Adams et al., and Slingerland and his co-state officers went out of office, and the defendants in this case succeeded to the several offices named in the title. Upon the trial of the case the plaintiffs, to show title, offered in evidence the judgment-roll in said case of Treadway v. Slingerland, relying upon it to show that the question of title is res adjudicata. The defendants objected on the ground that the suit was between private parties, to which the state was not, and could not be made a party; that the defendants hold under the state, and are not in privity with Slingerland; and that the state's title is in no way affected by that judgment. After full argument the circuit judge sustained the objection, the district judge dissenting, and the testimony was thereupon rejected under the statute—the opinion of the presiding judge for the time being prevailing. As the district judge had, on a previous occasion, ruled differently, the plaintiff's counsel had relied upon this judgment-roll as conclusive, and were not prepared to try the case on their original title. Upon their application upon the ground of surprise, a juror was allowed to be withdrawn, and the case continued. At the present term, a jury having been waived, the cause was submitted to the court upon stipulated facts, embracing simply the said judgment-roll, and other facts necessary to make it applicable— the plaintiffs concluding to rely upon it without putting in and re-litigating their original title. The question, therefore, is precisely the same as that upon the former trial as to the effect of the said proceedings and judgment in the case of Treadway v. Slingerland. Section 2778 of the Compiled Laws of Nevada provides that, "whenever the governor shall direct, or in the opinion of the attorney-general, to protect and secure the interests of the state, it is necessary that a suit be commenced or defended in any court, it is hereby made the duty of the attorney-general to commence such action or make such defense."

R. S. Mesick, for plaintiffs.

J. R. Kittrell and R. M. Clarke, for defendants.

SAWYER, Circuit Judge. After a careful review of the question, with deference to the opinion of the district judge, I am compelled to say that I am still satisfied with the conclusion reached and announced at the former trial. The oral decision then delivered was taken down by a shorthand reporter, and as it sufficiently presents my views upon the point, I shall adopt it without rewriting. It is as follows:

"With reference to the admissibility of this record, the only question in my mind is, whether the judgment in that case can, under any circumstances, be binding upon the state of Nevada. If not binding upon the state of Nevada, it can have no relevancy to the issues in this case. It is a well-settled principle that the state cannot be sued in its own courts without its express consent given by law. Upon that question there is no conflict in the authorities. The Davis, 10 Wall. [77 U. S.] 19; The Siren, 7 Wall. [74 U. S.] 153, 154. But the exact point which arises in this case has never been determined by any court that I am aware of. That is to say, it has never been decided that, if an officer of the government is a trespasser, and is sued in his individual character for the trespass, and a judgment rendered against him, although the state may be affected by such judgment, it is concluded by the adjudication. There is no decision to which my attention has been called, or so far as I am aware, determining the effect of such a judgment as against the state—whether it adjudges or conclusively determines its rights.

"If the state can be bound by the judgment against Slingerland, it must necessarily have been substantially and in fact, though not in form, a party to the action. And yet

it cannot be sued without its express assent given by law. And where the state cannot be sued, the decisions are to the effect that the fact of its having been sued, and the state's attorney having in fact appeared, does not change the phase of the question at all. It has been decided in at least two cases by the supreme court of the United States, that the appearance by the United States attorney, without authority, does not give jurisdiction over the United States. In the case of the U. S. v. McLemore, 4 How. [45 U. S.] 286, an action was brought in relation to certain moneys, and 'the district attorney of the United States answered the bill, and the matter of payments was referred to a master, who reported a balance against the United States after paying the judgment. On this report the district judge, holding the circuit court, decreed a perpetual injunction, and that the United States should pay the costs. The supreme court held that there was no jurisdiction of this case in the circuit court, as the government is not liable to be sued except with its own consent, given by law. Nor can a decree or judgment be entered against the government for costs.'

"So that notwithstanding the fact that the attorney of the United States appeared without making the objection in the court below, and the case went to judgment, the judgment was held to be void for the want of jurisdiction. That decision is affirmed in the case of Hill v. U. S., 9 How. [50 U. S.] 386. In that case a bill was filed on the equity side of the court by Hill and the other complainants against the United States, to enjoin a judgment obtained against the complainants by the United States. The United States attorney at first answered fully to the merits, thus appearing and giving the court all the jurisdiction that could be given by a voluntary appearance. A motion was afterwards made by the United States attorney to dissolve the injunction and dismiss the bill as to the United States, for want of jurisdiction as to them. In the decision of this case the supreme court says:

"'The question here propounded, without any necessity for recurrence to particular examples, would seem to meet its solution in the regular and best-settled principles of public law. No maxim is thought to be better established or more universally assented to than that which ordains that a sovereign cannot, ex delicto, be amenable to its own creatures or agents employed under its own authority for the fulfillment merely of its own legitimate ends. A departure from this maxim can be sustained only upon the grounds of permission on the part of the sovereign or the government, expressly declared, and an attempt to overrule or to impair it on a foundation independently of such permission must involve an inconsistency and confusion, both in theory and practice, subversive of regular order or power. * * * Without dilating upon the propriety or necessity of the principle here stated, or seeking to multiply examples of its enforcement, we content ourselves with referring to a single and recent case in this court, which appears to cover the one now before us in all its features. We allude to the case of U. S. v. McLemore, 4 How. [45 U. S.] 286, where it is broadly laid down as the law, that a circuit court cannot entertain a bill on the equity side of the court, praying that the United States may be perpetually enjoined from proceeding upon a judgment obtained by them, as the government is not liable to be sued, except by its own consent given by law.'

"Unless consent is given by the law in a suit against the state or government the court under these decisions has no jurisdiction, and the fact that the state's attorney appears voluntarily to contest it does not give the court jurisdiction where it was before without jurisdiction. The supreme court in these cases declares the judgments to be void for want of jurisdiction, notwithstanding the fact that the attorney of the government assumed to appear for it. It is held by other authorities that the officer may be sued in his individual capacity. The case of Osborn v. U. S. Bank, 9 Wheat. [22 U. S.] 738, affords as good an illustration as any other upon this point. There the treasurer was sued and an injunction applied for restraining the defendant from disposing of the money seized by him on behalf of the state. Pending the action there was a change in the treasurer. Counsel were evidently aware of the effect of this change upon the case, because a supplemental bill was filed making the successor in office a party in order to bind him, thus recognizing the principle that he would not have been bound by a judgment against his predecessor.

"But in that case the money had not been mingled with the funds of the state. It had been kept separate in bags by the former treasurer, was transmitted by him in that manner to, and was kept separate by, his successor. They were sued individually, and it was held that the action could be maintained. Now, undoubtedly, if a judgment had been recovered against the treasurer he would have been personally responsible for that money; he had committed a breach of the law, the statute under which he acted having been declared unconstitutional. He would have been personally responsible for the trespass. But the court sustained this bill for an injunction, on the ground that the money was kept separate in his control, and could be identified as the specific money seized. It is said in the decision that it might have been reached by an action of detinue. The identical money could be reached in the hands of these parties. If the money had been mingled with the money of the state, and had so lost its identity,

there is nothing in the decision to indicate what the effect of the judgment against the treasurer would have been upon the rights of the state. At all events there is nothing to indicate that the judgment against these parties would have been a bar in an action by the state, if the state had afterwards sued the bank for the amount of the tax. Of course, if the state had afterwards sued the bank for the money, the adjudication upon the law would have been authority upon the law of the case. But the facts, I apprehend, would have been open to re-examination. There was a question of fact discussed in the case as to whether the testimony was sufficient to show that the money went into the hands of the second treasurer, and the court held that it was. But there is nothing to indicate that the matter would have been res adjudicata in an action by the state against the bank. In this case, if the state cannot be sued, as it cannot be, I do not see how it is possible that a judgment against one of its officers sued in his individual capacity can be conclusive upon the rights of the state, even though the state happens to be interested in the subject-matter of the action, and the attorney-general, in consequence of that interest, appears for the officer, and assumes to defend him as his individual attorney or otherwise. The court still fails to get jurisdiction of the state. Where the officer is sued in his individual capacity, and the state cannot be made a party, I do not see upon what principle a judgment against the officer can be binding upon the state as a matter adjudicated between the state and the plaintiff. A matter can be res adjudicata only between the parties to the action and their privies. The case read by counsel for plaintiff from 16 Wall. [83 U. S.] giving a synopsis of what was determined in Osborn v. U. S. Bank, it seems to me indicates that there could be no valid judgment against the state. It is said by the court: 'In deciding who are parties to the suit, the court will not look beyond the record. Making a state officer a party does not make the state a party, although her laws may have prompted his action, and the state may stand behind him as the real party in interest. A state can be made a party only by shaping the bill expressly with that view, as where individuals or corporations are intended to be put into that relation to the case.' Davis v. Gray, 16 Wall. [83 U. S.] 220.

"If in an action against a state officer in his individual capacity for a trespass committed under color of his office, the state cannot be considered a party for the purpose of defending an action on the ground that the state cannot be sued, it seems absurd to hold that the state is, nevertheless, a party for the purpose of having its rights conclusively determined by the judgment rendered.

"The case of landlord and tenant cited does not seem to me to be in point, because there the landlord is liable to be sued without his consent. If he appears and defends the suit, it is his own act. He, substantially and voluntarily, becomes a party to the suit, and the court having jurisdiction of the subject-matter and the party, by his voluntary assumption of the defense, is bound by the result. The state cannot be made a party at all, without its consent, and the assumed appearance of the district attorney or attorney-general, without express authority of law, does not constitute a consent. I do not think the provision in the statute of Nevada, in regard to the duties of the attorney-general, touches the question. It might be the duty of the attorney-general to appear and make the objection that the state cannot be sued, and even to conduct the defense for the benefit of the state. But it is a general law, such as exists in most if not all the states defining the duties of the attorney-general, to appear and defend the interests of the state in those cases where the state may be rightfully sued. And it may be desirable that he should appear and defend officers of the state, or even others where the interests of the state may be affected, although the decision against the parties to an action might not be an adjudication conclusive upon the rights of the state. It may be a short, easy, and, if successful, convenient way of protecting the state interest, and, as such, a proper course for him to pursue. However this may be, it is clear that this section of the statute does not in terms, or · by any reasonable implication authorize private parties to sue the state; and we have seen from the authorities cited, that where there is no authority of law for suing the state, an assumed authority of an attorney of the state to appear does not confer jurisdiction over the state. A fortiori, his assuming to appear unofficially for the defendants in defense of actions brought against private parties in their individual capacities who happens to be officers of the state, and to which the state is not and cannot be made a party, cannot confer jurisdiction to conclusively determine the rights of the state as against the state. If such could be the effect of the judgment, it must be on the ground that the state can indirectly in substance and fact be made a party, when the law forbids her being made a party in form; and her rights may be determined in a case over which she has no control, for the defendants must have authority to control their own defenses, even if the defense is conducted by the attorney of the state.

"Under the view I take of the case, this is not an adjudication binding upon the state, and as the state is not concluded, I do not see how the present officers can be in privity with the prior warden, or how the state can be in privity with him. They

took nothing from him and the state got nothing from him. The rights of the state upon which the defendants rely depend upon its own title, not derived from Slingerland, the former warden. In my judgment the record is of no effect and inadmissible. If plaintiffs have a title they ought to recover their land. The point which they make is that the state is estopped from showing that they have not any title. They will be permitted to show their title, if they have any. I will say to counsel that my associate, the district judge, does not concur in the views I have expressed. There is a division of opinion between us. But as the law now stands, the opinion of the presiding judge prevails for the time being."

The very elaborate opinion in Lee v. Kaufman, recently decided by Judge Hughes, cited by plaintiffs' counsel on the present trial, only goes to the question of jurisdiction over actions against officers, and does not in my judgment touch the question of the effect of this judgment. [Case No. 8,191.] For the purpose of this decision, I assume that the court had jurisdiction of the action against Slingerland individually, without discussing the point or formally deciding it.

There must be a judgment for the defendants, with costs, and it is so ordered.

[NOTE. Without an act of congress no direct proceedings will lie at the suit of an individual against the United States or its property; and no officer of the government can waive its privilege in this respect, nor lawfully consent that such a suit may be prosecuted so as to bind the government. Carr v. U. S., 98 U. S. 433; James v. Campbell, 104 U. S. 359; U. S. v. Lee, 1 Sup. Ct. Rep. 240; Cunningham v. Macon & B. R. Co., 3 Sup. Ct. Rep. 292, 609; Poindexter v. Greenhow, 5 Sup. Ct. Rep. 903, 962; Hagood v. Southern, 6 Sup. Ct. Rep. 608; Avery v. Fox, Case No. 674.]